IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DONALD TENNIS,

       Plaintiff,

vs.                                                        Civil No. 04-0229 RLP

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This is an action to review the final decision of the Commissioner of the Social Security Administration [42 U.S.C. §405(g)] denying Plaintiff Donald Tennis' applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. This matter comes before the court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No.13). For the reasons stated below, I find that Plaintiff's Motion is well taken and should be granted.

## PROCEDURAL HISTORY

Plaintiff's applications for disability benefits and supplemental security income were denied initially and on reconsideration. Following a December 4, 2002, hearing, an administrative law judge ["ALJ" herein] issued a decision on April 15, 2003, denying Plaintiff's claims. The Appeals Counsel declined Plaintiff's request for review on February 2, 2004. The ALJ's decision stands as the Commissioner's final decision.

## STANDARD OF REVIEW

Pursuant to *§42 U.S.C.  405(g)*, any "finding of the Commissioner as to any fact, if supported

by substantial evidence, shall be conclusive."  Substantial evidence is more than a scintilla; it is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401- 02, 91 S.Ct. 1420, 1427-28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989).  "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (*quoting Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (*quoting Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence," *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994) (citation omitted), or 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.' " *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)).

This court also determines whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Glass v. Shalala*, 43 F.3d at 1395.  The court typically defers to the ALJ on issues of  credibility, *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992), but does not mechanically accept the Commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985).   I will " 'examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.'" *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir.1994) (*quoting Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-01

(10th Cir.1991)).

The Commissioner has developed a five-step sequential process for determining disability. *Bowen v. Yuckert*[1], 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). This process comes to an end if at any point the Commissioner determines the claimant is disabled or not. *Gossett*, 862 F.2d at 805.

The claimant has the burden of proving a disability that prevents him from engaging in his prior work for a continuous period of twelve months. *Trimiar*, 966 F.2d at 1329. The burden then shifts to the Commissioner to show that the claimant retains the ability to do other work activity and the jobs the claimant could perform exist in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The Commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993).

## THE ALJ'S DECISION

In his Order of April 15, 2003, the ALJ found that Plaintiff met the qualifications for coverage for disability insurance benefits, and that he suffered from mild multilevel degenerative disc disease with compression fracture at L2, a severe impairment which did not qualify as a listed impairment. He found that Plaintiff's allegations regarding his limitations were not totally credible. The ALJ

---

[1]Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder proceeds to step two and considers whether "the claimant has a medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 141, 107 S.Ct. at 2291. At step three the fact finder determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. P, App. 1, which are considered so severe as to preclude substantial gainful activity. If no equivalency is found, the claimant must show that because of the impairment he is unable to perform his past work (step four). At the fifth and final step the fact finder to determines whether the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988).

assigned Plaintiff a residual functional capacity for a significant range of light work; specifically, that Plaintiff could occasionally lift and carry up to 20 pounds and frequently lift and carry 10 pounds, further reduced by "occasional posturals," no exposure to heights/hazards, with mildly limited bilateral manipulation due to left upper extremity impairment. Based on this RFC, the ALJ found that Plaintiff was unable to return to his past relevant work. The ALJ's finding at step five is confusing. In the body of his opinion, he stated that based on the testimony of a vocational expert, that Plaintiff could perform three jobs available in the regional and national economy: Cashier, parking lot attendant and gate tender. In his findings the ALJ referred only to the Medical-Vocational Guidelines, stating that using them as a framework, Plaintiff was not disabled. The Parties treat the ALJ's findings at step five as based on vocational testimony. Accordingly, I will do the same.

## ISSUES RAISED

Plaintiff contends that the ALJ failed to apply correct legal principles in assessing RFC because he did not assess Plaintiff's work related abilities on a function by function basis, as required by Social Security Ruling (SSR) 96-8p; that the ALJ wrongfully failed to consider side effects of medication which he testified made him drowsy; that the ALJ failed to give proper consideration to the finding of total, permanent disability made by the VA; that the ALJ's credibility findings failed to comport with the requirements of Social Security Ruling (SSR) 96-7p; and finally, that the ALJ erred in accepting without explanation the testimony of the vocational expert, which was inconsistent with the Dictionary of Occupational Titles.

## FACTS

Plaintiff, born December 10, 1950, sustained back injuries in a fall on October 1, 2001[2]. (Tr.

---

[2]Plaintiff fell 12-14 feet from a ladder while working as a handyman.

56, 69, 105-111).  On admission to a hospital emergency room, Plaintiff complained of upper back, lumbar and pelvic pain, but refused pain medication.   On examination, he was tender along his thoracic and lumbar spine and at the iliac crest of his pelvis.  Neurological examination was normal.[3] (T. 105).  X-rays revealed mild degenerative changes in the cervical and thoracic spine and a compression fracture at L2.  (Tr. 108-110).  Prior to discharge he was given *Vicodin*[4], a prescription for *Vicodin* to be taken as needed,  and told to take 600 mg of *Ibuprofen* four times a day.  (Id.). He was also advised to follow-up as needed.   He contacted the hospital  on October 10, 2001, requesting a statement that he should be out of work.  The hospital physician, Dr. Fred Fox, wrote: "OOW (out of work) x 1 week until seen by physician.  Needs f/u if he is still having problems."  (Tr. 107).

Plaintiff was seen by Dr. John Lund on October 22, 2001.  He indicated that he had not filled his prescription for *Vicodin* because he had no money.  Dr. Lund did not record a medical examination.  He wrote that  Plaintiff should not work until ready to do so, in "2-4 wks??", advised him to use heat, and gave him *Vicodin* tablets.  (Tr. 112).

Plaintiff was evaluated by  the Veterans' Administration on May 9, 2002, in connection with his request for non-service related disability benefits.  (Tr. 128).  Non-service related disability benefits are awarded upon a finding of total, permanent disability.  *38 U.S.C.A. §1521 (a)*.  The VA awarded benefits on July 9, 2002, citing "fracture of the lower back, degenerative disc disease of the cervical spine and osteoarthritis of the left shoulder."

---

[3]Grip was intact, he moved all extremities, DTRs were 2+ and "motor" was "intact." (Tr. 105).

[4]*Vicodin* is a prescription analgesic indicated for the relief of moderate to moderately severe pain. 1999 Physicians' Desk Reference, at 1486.

The only other recorded medical examination in the Administrative Record is a consultative examination performed at the request of the Disability Determination Unit by Nicholas Nillo, M.D., on May 14, 2002.[5] (Tr. 113-116). At this exam, Plaintiff complained of weakness of his left arm and hand, residual nondescript discomfort of the left shoulder and elbow that was improving, constant residual ache from the neck to the top of the buttocks, and occasional spasm of the left lower lumbar area and right lower trapezius. He also stated that the discomfort increased after standing for one hour, requiring him to change position frequently, that he could walk one-quarter of a mile, that driving long distances caused him to be very stiff, that bending and lifting increased discomfort, that he limit lifting to 20 pounds at a time, and that he had difficulty hyper-extending his back and neck. On physical examination, Dr. Nillo noted that Plaintiff walked with a normal gait[6] and did not appear to be in distress. He had discomfort hyper-extending his back. His hands showed severe hyperkeratosis with no associated functional abnormality[7]. He had no abnormalities on palpation and range of motion testing of his left shoulder and elbow. His back showed a prominent angulation of the spinous process at L2, with mild tenderness at that site, but no palpable spasm or scoliosis. Plaintiff appeared to be in discomfort in a seated position at 75 degrees lumbar flexion. He was able to stand on either leg alone and shift his weight from one leg to the other without difficulty or discomfort, walk on his heels and toes, squat and get back up. His neurological exam was within

---

[5]At some point Plaintiff was approved for Medicaid assistance, and was seen by a Dr. Fowler, who in turn referred him to a physical therapist, Dr. Robinson. As of the date of Dr. Nillo's evaluation, Plaintiff had not received any physical therapy. (Tr. 113).

[6]"Gait is normal in speed and stability and does not appear to be antalgic." (Tr. 115).

[7]Strong peripheral pulses, intact peripheral circulation, both hands could be fully extended, fists made and fingers opposed without difficulty. Grips were symmetrical and within normal limits. Muscles bulk and tone of the upper extremities was good, and motor strength was 5/5. (Tr. 114-115).

normal limits[8], except for report of diminished light cutaneous sensation over the left leg and thigh. Dr. Nillo concluded that his examination was compatible with the prior diagnosis of compression fracture of L2 and occupationally related hyperkeratosis of the hand.

At the hearing held on December 4, 2002, Plaintiff testified that he completed the 6th grade, and had been working as a handyman at the time of his October 2001 injury. He lives in a rural area with his 18 year old son and he receives VA benefits of $798 per month for a non-service connected disability.

Plaintiff described his pain as a burning sensation along the belt line which had worsened over the prior year. He stated that his legs were normal about half the time, but became numb and/or painful depending on how long he sat or stood, and that on three occasions they had given way. He further stated that he could stand for 30 minutes if he could lean on something and walk a quarter of a mile, slowly, sit for up to one hour at a time, and that he had to move around or lie down to ease his pain. He complained of osteoarthritis of his left shoulder, which prevented him from reaching forward or overhead with that arm, and that at times he was not able to grip with his left hand. His right arm and shoulder were "fine," and he could lift 20-25 lbs.

Plaintiff stated that he used heat and ice on his back, and wore a belt to support his back. He treated his pain with *Ibuprofen*, and *Vicodin* which he did not take as prescribed (every four hours) because he had a very high tolerance for pain. He also stated that *Vicodin* made him drowsy. He stated that he had trouble sleeping because of pain, and that had not slept more than four hours a night since his injury. During the day, he lies down from two to four times because of pain, for 10

---

[8]Cranial nerves II-XII are intact. Reflexes 2+ symmetrical and physiological. Coordination intact. Sensation intact over the feet. (Tr. 115).

to 45 minutes at a time.  He putters around his property, picking up fire wood or watering,  and visits

a friend who had an auto mechanic shop.  He has not worked since his injury.

The ALJ called a vocational expert (VE) to testify at the hearing.  The VE was asked to

assume an individual of Plaintiff's age, education and past work experience, who was limited to light

work with additional limitations including

> . . . limited to occasional postural [INAUDIBLE], precluded from working on heights
> and probably around hazards in a more limited sense in terms of fall precautions ...
> and is a somewhat reduced bilateral use of upper extremities, and this is secondary to
> some limits [INAUDIBLE] use of the non-dominant left upper extremity. It's difficult
> to quantify.  I think it would be somewhat less than the right extremity.  It would
> probably . . . [be] between occasional and frequent use  [INAUDIBLE] of the upper
> extremities.

(Tr. 166).

The VE testified that such an individual could perform the unskilled jobs of cashier[9] and parking lot

attendant[10] and the semiskilled job of gate tender.[11]  On further questioning by Plaintiff's attorney,

the VE stated that if he were to assume further limitations of sitting for one hour at a time, standing

for 30 minutes at a time and walking for no more than one-quarter mile at a time the numbers of

cashier jobs would be reduced, but that the other two jobs would be unaffected.  In response to a

question by the ALJ, the VE stated that his testimony was consistent with the DOT.

<u>RFC</u>

The ALJ found plaintiff could "perform work activities including occasionally lifting and

carrying up to 20 pounds and frequently lifting and carrying 10 pounds, occasional posturals, no

---

[9]DOT 211.462-010.

[10]DOT 915.473-010.

[11]DOT 372.667-030.

-8-

heights/hazards, mildly limited bilateral manipulation due to left upper extremity" (Tr. 20) and "[t]he claimant has the residual functional capacity to perform a significant range of light work." (Tr. 21). Plaintiff argues that the ALJ erred in analyzing his RFC, by failing to assess his abilities on a function-by-function basis, and by failing to base the RFC finding on positive evidence.

The ALJ should assess RFC , making specific function-by-function findings at step four of the sequential evaluation process. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996); *Soc. Sec. R. 96-8p*, 1996 WL 374184, at *1. Although the ALJ's step-four analysis should have been more detailed, *see Soc. Sec. R. 96-8p, 1996 WL 374184*, at *3, this deficiency does not in and of itself provide a reason for reversal. *See Ferguson v. Barnhart*, 52 Fed. Appx. 112, 114, 2002 WL 31667969, *2 (10th Cir. 2002). The ALJ concluded at step four that Plaintiff could not return to his past relevant work, and proceeded to step five, in which the burden shifts to the Commissioner to show that Plaintiff retained sufficient RFC to perform work in the national economy, given his age, education, and work experience. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). At step five, the RFC is to be "expressed in terms of, or related to, the exertional categories when the adjudicator determines there is other work the individual can do." *Soc. Sec. R. 96-8p*, 1996 WL 374184, at *3.

The Commissioner must address those specific exertional functions for which the medical record supports a limitation or impairment. *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000). Dr. Nillo's evaluation, the only medical evaluation in the record relied upon by the ALJ, establishes that Plaintiff has pain with hyper-extension, and at 75 degrees of flexion of his spine. It was apparently based on this limitation that the ALJ found Plaintiff's RFC included restriction to "occasional postural movements" or "posturals." The court is at a loss to know what these terms

mean, particularly in view of the fact that the ALJ determined that Plaintiff's RFC did not include a

sit/stand option.  Use of such loose, undefined terminology prevents this court from assessing whether

the ALJ's RFC determination, and the hypothetical question utilizing that term, accurately reflect all

of the impairments borne out by the evidentiary record.  *Evans v. Chater,* 55 F.3d 530, 532 (10th

Cir.1995).

CREDIBILITY

Plaintiff argues that the ALJ erred in assessing his credibility by relying upon the lack of

objective medical evidence to support his complaints.  In assessing credibility, the ALJ stated that:

> . . .  [Plaintiff'] statements about the intensity and persistence of pain or other
> symptoms and about their limiting effect are not fully substantiated by objective
> medical evidence (reduced joint motion, spasm, sensory deficit, and motor disruption,
> etc.)  The claimant is taking no prescribed medication and no over the counter
> medication.  In fact, the claimant refused pain medication at the time he sustained the
> compression fracture on October 2001.  The claimant elicited no unusual complaint
> of pain or limitation during the consultative examination in May 2002.[12]  The
> claimant's complaints are not entirely consistent with the longitudinal history or
> treatment the claimant has received.  The claimant's allegation [sic] are partially
> supported by the Administrative Law Judge's observations of the claimant's
> appearance and demeanor. The claimant looked older than his chronological age and
> changed positions during the hearing.  However, the claimant also has a history of
> non-compliance with medical treatment.  The record further establishes a motivation
> for secondary gain.  The claimant did not follow up after this emergency room visit
> in October 2001 although he requested a statement of inability to work immediately
> after his tree- trimming accident.

(Tr. 18).

---

[12]Dr. Nillo's exam findings did not support Plaintiff's subjective complaints in several functional areas.  Plaintiff complained of reduced ability to walk, both in terms of distance and speed, while  Dr. Nillo noted that Plaintiff walked with normal speed and stability.  Plaintiff complained of difficulty with strength in his left hand and arm, while Dr. Nillo noted no functional abnormalities of Plaintiff's hands, and stated that no abnormalities were noted on palpation and during range of motion of the left shoulder and elbow. Plaintiff complained of leg weakness, while Dr. Nillo noted that he stood normally, could stand on either leg alone, shift his weight from one leg to the other with no apparent difficulty or discomfort, could walk on his heels and toes, could squat and get back up.

The ALJ misstated the record as to several factors relied upon in assessing credibility. Plaintiff did receive pain medication at his emergency room visit (Tr. 105), he was seen at a follow up visit with Dr. Lund three weeks after his injury (Tr.112 ), he takes over the counter medication (Tr. 94, 103, 160), uses heating pads and ice packs (Tr. 160), and he takes prescription medication, albeit less frequently than prescribed.  (Tr. 103, 160).  It goes without saying that misstated evidence is not substantial evidence.   Although Plaintiff's limited medical follow-up and limited use of medication could support a rejection his credibility, this court is not empowered to make that finding.

## VA DISABILITY RATING

An ALJ is not bound by, but must consider disability ratings made by the Veterans' Administration.  *Baca v. Department of Health and Human Services*,  5 F.3d 476, 480 (10th Cir. 1993).  *Citing Fowler v. Califano,* 596 F.2d 600, 603 (3rd Cir. 1979).   The ALJ acknowledged that Plaintiff was receiving VA benefits, but declined to credit the finding of disability, stating:

> While the claimant has been determined entitled to non-service connected permanent VA benefits, this entitlement program is based on VA regulations and not Social Security Administration laws and regulations.  Moreover, the issues of residual functional capacity and disability are reserved to the Commissioner.

(Tr. 18).

Citing a Ninth Circuit case[13], Plaintiff argues that disability ratings by the VA are to be accorded great weight because of the similarities between the Veterans' Administration and Social Security disability programs, and therefor the reasons given by the ALJ for disregarding the VA finding of disability are unconvincing.   The Commissioner responds that the ALJ did consider the VA's finding, gave it less than controlling weight, and subsequently concluded, based on substantial

---

[13]*McCartey v. Massanari*, 298 F.3d 1073, 1075-1076 (9th Cir. 2002).

evidence, that Plaintiff had the RFC for a significant range of light work.  As indicated above, the ALJ's RFC finding is deficient.

Because this matter must be remanded to address issues of residual functional capacity and evaluation of credibility, I do not reach Plaintiff's fourth issue, the alleged conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles.

### CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing is granted.  The decision of the Commissioner, denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income is reversed, and this matter is remanded to the Commissioner of Social Security for additional proceedings, to include:

(1)     Reassessment of Plaintiff's residual functional capacity;

(2)     Reassessment of Plaintiff's credibility;

(3)     Reconsideration of the finding of total, permanent disability by the VA.  Given the paucity of medical documentation in this matter, review of the VA's medical report, not simply its finding of disability, will assist a future adjudicator. The Commissioner is directed to obtain the medical report upon which the finding of disability was made.

(4)     Obtaining vocational evidence, utilizing hypothetical questions which accurately reflect those impairments established by the medical record.

**IT IS SO ORDERED.**

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**

-12-